T.C. Memo. 2016-145

UNITED STATES TAX COURT

PETER SZANTO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SUSAN SZANTO AND PETER SZANTO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 17912-14, 19749-14.          Filed August 1, 2016.

Peter Szanto and Susan Szanto, pro sese.

<u>Sandy Hwang</u> and <u>Hans Famularo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a $23,823.67 deficiency, a

$5,471.52 addition to tax under section 6651(a)(1), and a $4,764.73 penalty under

section 6662(a) with respect to petitioners' Federal income tax for 2008.  The

**[\*2]** notice of deficiency for 2008 was addressed to both petitioners, who had filed a joint return for that year. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Susan Szanto filed a petition with respect to 2008 that was assigned docket No. 8221-13. Peter Szanto (petitioner) filed a petition in bankruptcy and did not join in the case at docket No. 8221-13 but later filed the petition in the case at docket No. 17912-14 contesting his liability for 2008 after his bankruptcy proceeding was dismissed. In the answer in the case at docket No. 17912-14, respondent alleges that the case at docket No. 8221-13

> resulted in no deficiency because Peter and Susan Szanto had sufficient foreign tax credits for the 2008 year that decreased much of the deficiency in the related case, they substantiated some of the adjustments, and Appeals conceded a small amount of adjustments for settlement purposes. On May 29, 2014, this Court issued an Order and Decision in the related case, docket no. 8221-13, where the Court ordered and decided that there is no deficiency in income tax due from, nor overpayment due to Susan Szanto for the taxable year 2008. * * * [T]he related case is identical to this case in that both cases involve the same joint return, same 2008 year, same Notice, same issues, and Peter Szanto, although not a named party, was actively involved in the resolution of the related case.

[*3] Respondent thus conceded that there was no deficiency due from petitioner for 2008.  Petitioner claims an overpayment for 2008, attempting to reopen issues decided in the case at docket No. 8221-13.

Petitioners filed the petition in the case at docket No. 19749-14 in response to a notice of deficiency for 2009, which determined a $2,409 deficiency, a $555.96 addition to tax under section 6651(a)(1), and a $481.80 penalty under section 6662(a).  The issues for decision are whether petitioners are entitled to deductions not previously allowed, including a loss claimed on rental of their residence, and whether they are liable for the addition to tax and penalty for 2009.

FINDINGS OF FACT

None of the facts have been stipulated.  In the petition in the case at docket No. 17912-14, dated July 27, 2014, petitioner provided a mailing address in California but represented that his State of legal residence was Nevada.  In the petition in the case at docket No. 19749-14, dated August 13, 2014, petitioners represented that their State of legal residence was California.  (Although this disparity does not affect venue for any appeal from our decisions in these cases, it is significant for reasons related to petitioner's credibility, as discussed below.)  Petitioners' personal residence during 2007, 2008, and 2009 was in Newport Beach, California, although that fully furnished residence was rented to others

[*4] from time to time, including for six months during 2009. Personal property, including artwork, was left in the residence, and petitioner operated a jewelry repair business out of the residence. Petitioner maintained a real estate broker's license during the years in issue.

On their returns for 2008 and 2009, petitioners reported income from renting their personal residence to others but deducted expenses far in excess of the rental income reported. The rental loss deduction claimed for 2008 was not adjudicated in the case at docket No. 8221-13 for reasons set forth below. Petitioners reported rental income of $18,600 for six months in 2009 and claimed a rental loss deduction with respect to the Newport Beach property totaling $68,165. They did not substantiate any rental expenses other than a $30,561 mortgage interest expense and $18,518 in real property taxes, both for which respondent has allowed deductions. Because the total from allocating 50% of those items ($15,281 + $9,259 = $24,540) exceeds the $18,600 of rental income reported, section 280A precludes deduction of any additional expenses even if substantiated. Respondent allowed the balance of the substantiated mortgage interest and real property taxes on Schedule A, Itemized Deductions.

On their return for 2009, petitioners also claimed and deducted $13,295.82 in losses, including $10,047.13 in depreciation expense, in relation to residential

[*5] property in Miami, Florida, which they did not own during 2009. They claimed deductions on three vehicles for actual expenses and depreciation as well as mileage at a standard rate. Petitioner did not maintain a reliable log showing the time, place, and business purpose of travel relating to specific vehicles or other records satisfying the requirements of section 274(d) to support a deduction for travel expenses claimed in relation to his jewelry repair business.

Petitioners' return for 2008 was filed in June 2010, and their return for 2009 was filed in April 2011. Petitioners later filed amended returns for each year on which they admitted receipt of income not reported on the returns originally filed. On an amended return for 2008, they omitted the claimed loss deduction from renting their Newport Beach residence. The Newport Beach address was used as petitioners' address on the returns filed for the years in issue.

Petitioner has legal training although he is not a member of any bar. He has frequently engaged in litigation with his son, his brothers, and others. Petitioner was the plaintiff in the U.S. District Court for the Central District of California, in Case No. 8:15-cv-00241-AG-DFM (District Court case). On October 22, 2015, 11 days before the instant cases were set for trial, he filed in the District Court case a document entitled "Plaintiff's Preliminary Response to Court's ORDER Regarding Jurisdiction and Vexatious Litigant OSC and Request for Additional Time Further

**[\*6]** to Respond." In that document he misrepresented the status and the subject matter of these cases as a reason for his request for additional time. In the same document he represented to the District Court that he had not resided in California since 2012.

OPINION

Petitioners bear the burden of proving entitlement to the deductions that they claim. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C. Memo. 1972-133. A court is not bound to accept improbable, unreasonable, or questionable testimony at face value. Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), aff'g T.C. Memo. 1969-48; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), aff'g per curiam T.C. Memo. 1969-159; Shea v. Commissioner, 112 T.C. 183, 188-189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners have not satisfied any of the conditions for shifting the burden of proof under section 7491(a) and (b).

For purposes of impeachment, respondent's counsel asked petitioner during trial about the document filed in the District Court case. Petitioner noted that the document was not under oath. His explanation at trial was that

[*7] [t]here is a methodology in legal writing where, like it or not, you cull the chaff, that, yes, you've caught me in a lie. No question about it. You've caught me in a lie that in whatever dates I reference, what we referenced in 2014, I told you I was a resident of California, yes, that is true. It seems at variance with my representation here. But I assure you it is not. It is merely the fact that a person can reside in one place today and reside in another place tomorrow and reside in the same place on the third day. So--the same place as on the first day. So, you know, while I enjoy your semantical juggernaut, I think that it has very, very little relevancy to taxes in 2009.

In other words, petitioner evaded addressing material facts and was not a straightforward, candid, or reliable witness. For the reasons discussed further below, petitioner's bald assertions during trial and in his posttrial filings, unsupported by corroborating evidence, are unreliable.

Since these cases were commenced, petitioner has adopted a strategy of attacking the Internal Revenue Service (IRS) auditor, the Appeals representative, and respondent's counsel rather than presenting substantiation of the expenses underlying the disallowed deductions in issue. He made multiple pretrial and posttrial motions that lacked merit and were denied. He has persisted before, during, and after trial in arguing about collection efforts relating to 2007 although the Court clearly lacks jurisdiction over that year. He was repeatedly advised that the Court conducts a trial de novo and that what occurred during the audit would not be considered. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324,

**[\*8]** 327-328 (1974).  The results of audits for other years are also irrelevant.  <u>See</u> <u>Rosemann v. Commissioner</u>, T.C. Memo. 2009-185, slip op. at 13 ("[E]ach taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a previous year.").  During and after trial petitioner persisted in arguing about the process of the audit despite the Court's warnings that his tax returns are not self-proving.  <u>See</u> <u>Geiger v. Commissioner</u>, 440 F.2d 688.  Yet he relies on forms and schedules that he prepared and submitted during the course of the audit or after the trial record was closed.  Petitioner did not produce substantiation for the various expenses underlying the claimed deductions or testify credibly about facts supporting the items in dispute.  Thus, the findings of fact set out above are sparse and lack specificity about petitioners' rental activities or other business dealings or expenses actually paid by petitioners.

During trial petitioner asserted various questionable legal theories to support his implausible explanations of events.  As a result the Court ordered seriatim briefs as follows:

> THE COURT:  All right.  Well, frankly, I did not expect to order briefs in this case, but I am so puzzled by the parties' respective legal positions that I need memoranda stating what they are.
>
> Mr. Szanto, you've referred to multiple rules in [title] 26, but you've never shown me any rule that supports your legal theory about

**[*9]** proportionality and 50 percent allowance and anything like that. So I really don't know what you're talking about.

And as far as Respondent's concerned, I don't understand why this case--maybe you can tell me now why your case doesn't represent a situation under 280A? What's--is Mr. Szanto correct that there's an exception to 280A for people in the real estate business?

*　　*　　*　　*　　*　　*　　*

MS. HWANG: * * * Your Honor, may I ask, if you're going to be ordering briefs, can we have seriatim briefs with Mr. Szanto going first?

THE COURT: That would make sense, because I don't understand his legal theories.

*　　*　　*　　*　　*　　*　　*

But, Mr. Szanto, don't talk about what the audit showed. Talk about what you proved in this court with the few documents that you presented and what the applicable law is.

MR. SZANTO: Yes, Your Honor.

Petitioner requested and was granted an extension of time to file his opening brief. However, the Court declined to extend the time for respondent's brief because of the uncertainty of whether petitioner would file a meaningful brief in a timely manner and the desirability of obtaining respondent's then position on the rental issues for 2009. When petitioner's brief was finally filed, it did not comply with the Court's direction to discuss the evidence, quoted above, and did not

**[\*10]** comply with Rule 151(e), particularly paragraph (e)(3), which provides in part that proposed findings of fact shall be based on the evidence and shall include references to the pages of the transcript or the exhibits or other sources relied upon. Instead, petitioner made innumerable factual statements for which no evidence was in the record and attached close to 400 pages of materials, including hearsay and other items not in the evidentiary record from the trial. Some of the documents were created after the trial of these cases. Petitioner refers to his documents and to his tax reporting positions as part of his attack on the auditor and the IRS generally although he has been warned repeatedly that such tactics do not advance his burden of proof. The attachments to his brief were stricken from the record, and respondent was ordered to file a reply brief addressing the proposed findings and legal arguments in the body of petitioner's brief. Petitioner complains about unfairness and represents himself to be a victim, but he continues to disregard the Rules and orders of the Court.

Rental Losses

As to the rental loss deductions claimed on petitioners' 2009 returns, the notice of deficiency stated: "It is determined that you used your home as your personal residence while it was rented. Therefore, your expense deductions are limited to the income you received as rent. You may not deduct a loss from these

[*11] rentals. Accordingly, taxable income is increased $81,461.00 for tax year ended December 31, 2009." The rental income and allowed deductions were moved by the auditing agent from Schedule E, Supplemental Income and Loss, to lines for other income and mortgage interest and real estate taxes. Respondent now concedes that the items should have remained on Schedule E.

Section 280A provides that a taxpayer is not entitled to deductions with respect to a dwelling unit that the taxpayer uses as a residence. The taxpayer uses a dwelling unit as a residence if the taxpayer uses it for personal purposes for a number of days that exceeds the greater of 14 days or 10% of the number of days during the year for which the unit was rented at a fair rental value. Sec. 280A(d). See generally Lofstrom v. Commissioner, 125 T.C. 271 (2005); Byers v. Commissioner, 82 T.C. 919 (1984). However, the taxpayer may still deduct the allocable portion of mortgage interest and taxes otherwise deductible as itemized expenses. See sec. 280A(b).

At trial petitioner commenced his opening statement by saying: "I want to put the case in context and as to why we're here. And the majority reason of why we're here has to do with the Schedule E rental of my house during the tax years 2007, 2008, and 2009." As to that issue and others petitioner concentrated on his disputes with the auditing agent but failed to address the material facts,

**[\*12]** notwithstanding constant reminders by the Court.  The transcript reflects the following:

>    MR. SZANTO:  Now, looking back to the Schedule E, we had two rental properties.  So, however you slice it--and the truth, of course, is that during the time that we received rental, we didn't live in these homes, but the truth, which is--should be evident from the fact, is that certainly we couldn't be living in two places at once, you know, irrespective of what the auditor says.  And so, if we're living at one, we certainly can't be living at the other.  So again, it's more of the tactics used by Respondent that, you know, slash and burn tactics, and--
>
>    THE COURT:  Well, you better tell me about how long you lived in Miami, how many days spent in the house as your residence.  Same thing with Newport Beach.  That's what the law requires.
>
>    MR. SZANTO:  And this was--this is in the--it should be in the --it was attached to the worksheet as to--
>
>    THE COURT:  I want your testimony under oath--
>
>    MR. SZANTO:  It was approximately--I believe it was six months for the Newport Beach property that it was rented to others, and in the case of the Miami Beach property, it was one month.

Petitioner identified the persons renting the Newport Beach residence as business acquaintances of his father and himself who used the home in Newport Beach to escape brutal winters in Budapest.  The residence was rented fully furnished.  The record does not disclose where petitioners lived while the residence was rented.

**[\*13]** At no point did petitioner specifically or credibly address the number of days during 2009 that petitioners occupied either residence, and the reasonable inference is that they did so during the periods when it was not rented, that is a total of six months during 2009 for the Newport Beach residence, which is 100% of the days the residence was rented to others.  See sec. 280A(d).  Thus, they may deduct expenses to offset only the reported rental income and may deduct any additional mortgage interest or real estate taxes allocable to their personal use. See sec. 280A(b).  Petitioners' brief simply ignores section 280A.

Petitioner claims to be a real estate professional and asserted at trial that section 280A does not apply to him.  He apparently has a real estate license, but there is no other evidence that he acted as a real estate professional during 2009 or engaged in any real estate activities other than rental of his residence or sublease of the Miami Beach property for a portion of a year.  Section 469, which limits passive activity losses such as these from a rental activity, creates an exception for taxpayers in a real property business, but such taxpayers must establish the number of hours devoted to the activity, among other things.  Sec. 469(c)(7).  Petitioner invokes section 469(i), which defines and limits passive activity losses with certain exceptions and allowances, and claims that he is entitled to an additional

[*14] $25,000 deduction. That section has no application to the facts of these cases. There is no applicable exception to the limits of section 280A.

Petitioner claims to have paid mortgage interest in addition to that on his primary mortgage but failed during the audit or at trial to show that the disputed item was qualified residence interest under section 163(h)(3). He relies on a form received from Chase Bank while acknowledging that the form is erroneous. He also refers to "a privately placed straight note", but he produced no evidence and did not even testify that the note was secured by his residence. Petitioners have been allowed deductions for mortgage interest and real property taxes to the extent substantiated, and they have not proven their entitlement to any additional amounts. As set forth in our findings, allocation of 50% of the substantiated amounts of mortgage interest and taxes exceeds the rental income reported for the six months that the Newport Beach property was rented. Thus, any additional claimed rental expenses, even if substantiated, would not affect the result. Such additional expenses have not been identified, much less proven, other than by petitioner's references to his filed returns. See Geiger v. Commissioner, 440 F.2d 688.

Petitioner claimed a loss deduction, including depreciation, for the Miami Beach property. The record does not disclose whether petitioners used that

[*15] property as a residence.  Petitioner produced only a lease agreement with an option to purchase for a term beginning December 1, 2009, and he argues that he may deduct depreciation relating back to the initiation of the option.  There is no evidence that petitioners ever owned the property, and petitioner testified that as of the time of trial in November 2015 ownership was being litigated.  In any event he has not proven a depreciable basis for the Miami Beach property.  Thus, no loss deduction may be allowed on that property.

Other Deductions

Petitioner also asserts questionable legal theories about deductions of costs of goods sold under section 162, inventory accounting, and capitalization of items under section 263A, but he has not established that he incurred costs attributable to goods sold during 2009.  He presented a single invoice for purchase of three items of jewelry, but he failed to show that sale of those items was included in reported sales of the jewelry repair business.  From the face of the invoice, it is unlikely that the items were used in repairs, and he did not testify that they were so used.  He claims that he may deduct against dividend income expenses incurred to maintain short positions in stock, but he has cited no authorities supporting that claim, and we have found none.  Petitioner attacked the auditing agent for not agreeing with petitioner's erroneous interpretation of statutes, but, regardless of

[*16] theory, he failed to provide substantiation of deductible expenses actually incurred.

Petitioners did not present evidence concerning disallowed deductions not discussed here although they included arguments concerning them in their brief. Petitioner has failed to prove entitlement to any additional deductions for 2008 or that the amount claimed as an overpayment was ever paid. For 2009, petitioners have not established any carryover amounts from other years. They merely cite the various returns and schedules petitioner prepared, without corroborating evidence. See Geiger v. Commissioner, 440 F.2d 688. Nothing in the record establishes permissible deductions not previously allowed by respondent.

Additions to Tax and Penalties

Because respondent has conceded that there is no deficiency for 2008, the addition to tax and penalty for that year do not apply. Respondent has the burden of going forward with respect to the addition to tax and penalty that remain in issue for 2009. See sec. 7491(c).

Section 6651(a)(1) provides an addition to tax for late filing of a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Respondent's burden of going forward on that issue has been met because petitioners' return for 2009 was not filed until April 2011. See Higbee v.

[*17] Commissioner, 116 T.C. 438, 446-447 (2001). Petitioner has referred to various family crises, but nothing in evidence constitutes reasonable cause for late filing. The 2008 return was belatedly filed in June 2010. As of that time the 2009 return might have been subject to an extension of time for filing. However, petitioners provided no explanation of why the 2009 return could not have been filed contemporaneously with the 2008 return. We therefore sustain the late-filing addition for 2009.

Section 6662(a) and (b)(1) imposes an accuracy-related penalty for negligence or disregard of rules or regulations. Section 6662(c) defines negligence as including "any failure to make a reasonable attempt to comply" with the provisions of Internal Revenue Code, "and the term 'disregard' includes any careless, reckless, or intentional disregard". In the amended returns, petitioners admitted omission of income on the returns originally filed and duplication of vehicle expense deductions. Those admissions standing alone satisfy respondent's burden of production. As far as the record reflects, petitioners failed to keep required records; they certainly did not produce any. Petitioner asserted untenable constructions of applicable statutes. The penalty for negligence or disregard of rules and regulations is entirely appropriate in these circumstances. See, e.g., Argyle v. Commissioner, T.C. Memo. 2009-218, aff'd, 397 F. App'x 823 (3d Cir.

**[*18]** 2010). Petitioners have argued only that they are not liable for the penalty because there is no deficiency, and they have not shown reasonable cause or good faith or any other defense to the penalty under section 6664(c). We therefore sustain the accuracy-related penalty for 2009.

We have considered the other arguments of the parties. They are moot, immaterial, or otherwise without merit. To reflect the foregoing,

<u>Decisions will be entered</u>

<u>reflecting no deficiency, addition to tax,</u>

<u>penalty, or overpayment for 2008 and for</u>

<u>respondent for 2009</u>.